# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK A. ROBINSON, | : |
| | : Civil No. 3:11-CV-1376 |
| Plaintiff | : |
| | : (Judge Mariani) |
| v. | : |
| | : (Magistrate Judge Carlson) |
| ROBERT MARSH, et al., | : |
| | : |
| Defendants | : |

## MEMORANDUM OPINION AND ORDER

### I.    Statement of Facts and of the Case

This is a *pro se* civil rights action brought by Mark Robinson, a state inmate who was confined at the State Correctional Institution (SCI) Rockview, in April of 2011. (Doc. 35.) In his amended complaint, filed on August 7, 2012, Robinson describes himself as a highly litigious, and mentally fragile, inmate-plaintiff. According to the well-pleaded facts set forth in Robinson's complaint, on April 12, 2011, the plaintiff was housed in the Restricted Housing Unit at SCI Rockview. Robinson alleges that while housed in the RHU, one of the defendants, Deputy Superintendent Marsh, stopped by his cell and threatened Robinson, stating that staff was going to confiscate Robinson's legal property in retaliation for his filing of civil complaints against prison officials. (Id., ¶12.) Robinson alleges that, on this same

day he experienced a "break with reality", which caused him to "remov[e] all of his clothing and cover[] himself along with plaintiff's entire . . . cell with . . . feces." (Id., ¶¶15-16.)

Robinson then states that defendant Klinefelter and unidentified defendant correctional officers entered his RHU unit cell, searching the cell and confiscating property. (Id., ¶¶17-23.) According to Robinson, after his cell was searched, and his property removed he was "left without anything inside of his . . . cell, except feces," (Id., ¶23), until he was transferred by Lieutenant Klinefelter to a prison mental health facility, the Special Assessment Unit at SCI Waymart. (Id., ¶24.) Robinson further states that, upon his return to SCI Rockview, he spoke with Lieutenant Klinefelter and asked why he was left in his cell on April 12, 2011, without medical or mental health assistance, clothing or an opportunity to clean himself. (Id., ¶¶25-29.) Robinson alleges that defendant Klinefelter stated that he was forced to remain in the cell under these harsh conditions at the direction of Defendant Marsh. (Id.) On the basis of these allegations, Robinson sues Deputy Superintendent Marsh, Lieutenant Klinefelter, and unidentified correctional staff, alleging that on April 12, 2011, the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment during this April 12 incident. (Id.)

This case now comes before the court for resolution of a discovery dispute. Specifically, Robinson seeks disclosure of the identities of the unidentified correctional staff who participated in this cell search on April 12, 2011. The defendants have refused to disclose the identities of these officers, and Robinson has moved to compel this disclosure. (Doc. 45.) This motion to compel has been fully briefed by the parties and is now ripe for resolution. For the reasons set forth below, the motion will be granted.

## II. Discussion

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

> (a) Motion for an Order Compelling Disclosure or Discovery
> **(1) In General. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery.**
> . . .

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any

3

> nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)( C ).

Fed. R. Civ. P. 26(b)(1)

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information" a concept which is defined in the following terms: "Relevant information need not be admissible at

trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D.Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009).

With respect to *pro se* civil rights litigation which names John Doe defendants, case law clearly recognizes that the identities of the John Doe defendants is a fact that is both relevant and discoverable, and contemplates that this information should be provided to *pro se* plaintiffs. See e.g., Blakeslee v. Clinton Cnty., 336 F. App'x 248, 250 (3d Cir. 2009)( "If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed.'); Scheetz v. Morning Call, Inc*.,* 130 F.R.D. 34, 37 (E.D.Pa.1990) ("Fictitious parties must eventually be dismissed ... if discovery yields no identities"); Trautman v. Lagalski, 28 F. Supp. 2d

327, 328 (W.D. Pa. 1998)(After conducting discovery, plaintiffs determined that Officer Doe was Kevin Gasiorowski and therefore sought to amend the complaint to substitute Gasiorowski for "John Doe.") Since this information, the identities of the John Doe defendants, is plainly relevant and discoverable, the motion to compel will be granted.

### III. <u>Conclusion</u>

Accordingly, this 1st day of May 2013, it is ORDERED that the plaintiff's motion to compel, (Doc. 45.) is GRANTED and the defendants are directed to provide the plaintiff with the identities of the John Doe defendants, if known by them.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
